Next case on the morning bracket is 516-0493, Peter v. Kenneth Loss, which is a consolidated case with 16-0492. You may proceed. May it please the Court, Counsel. My name is Elizabeth Crowdy and I represent Kenneth Loss in both of these matters. We have raised two issues that Mr. Loss is here before you on this today. The first is Mr. Loss's excessive, disproportionate, and financially wasteful sentence to eight years in prison. The second issue I will just touch on briefly, subject to this Court's question, which is the proper remedy for the improper imposition of the public defender fee on Mr. Loss. Well, the State concedes error on the public defender fee, right? But not the remedy. Okay. So I'll just touch briefly on a few sentences on that issue and then I'll spend the rest of my time. Okay, thank you. So typically I would agree with the State's analysis that if you have a hearing but it is an improper, incomplete hearing, the courts have indicated that you go back for a new hearing. But in this case you have sufficient evidence before you that there's no reasonable argument that Mr. Loss has the financial ability to pay that $500 fee and it should therefore just be vacated outright rather than devoting any more judicial resources to that determination. His finances are very clearly briefed and I won't waste this Court's time reiterating that issue unless you have questions. So the primary issue we're here today to discuss is the appropriateness of Mr. Loss' eight-year prison term. Now, to understand why it is unreasonable, excessive, and disproportionate, we need to go back to the charged convictions that Mr. Loss pled guilty to and the basis for his requirement to register under the Sex Offender Registration Act. Now, Mr. Loss triggered these requirements based on three misdemeanor convictions, all for public indecency. These occurred in 2001, 2004, and 2006. Now, the 2006 refers to the acts were committed in 2006. The convention was entered in 2007, so that's the discrepancy. None of these were charged or alleged to have involved offenses against children or offenses in any way that exhibited violence. Aren't you essentially arguing to us what's the matter of the legislature's concern about what qualifies to register as a sex offender? No, Your Honor. There are, and to my next point, which is a combination of this, there are certain crimes that trigger sex registration, and sex registration is a strict liability offense. Whether or not you're guilty doesn't matter what the past offense was if you're required to register. Well, that's my point. I mean, isn't that the legislature's determination that they say these crimes cause you to have to be a registered sex offender? And you're arguing in this case that those underlying crimes are not significant, and yet the legislature has said these are the crimes that we're going to require you to have to register. So that goes to guilt, but also the legislature has said that a violation of the Sex Offender Registration Act, such as the ones that occurred here, is a probationable offense. So culpability and dangerousness are both factors that the court must consider in deciding whether to impose any prison sentence at all, never mind anything above the minimum. So when I talk about Mr. Loss' prior convictions, and by the way, he's had no recurring convictions or charges related to sex conduct. After that, he successfully completed probation, actually even while he was on probation, but certainly since. Didn't he get a sentence of two years in 2014 for failure to report a change of address as a sex offender? Yes, but that wasn't related to sexual conduct. That was related to the requirements of the Act. But that's the same issue here, isn't it? It is the same statutory subset, but it is not the same issue. So in that case, and the details are explained, but it was failure to record an address or work. Here, the issue is temporary domiciles. And as is discussed in the Burchell decision from this Court, that particular definition and area of the statute is confusing. So, again, when I talk about Mr. Loss' past conduct or his violations that resulted in these convictions, we're not disputing his guilt, and we're not disputing that the State was within its discretion to charge and convict him of these matters. In fact, Mr. Loss pled guilty and fully admitted his responsibility. What we're here to talk about is whether it is reasonable, disproportionate, or excessive to charge to send Mr. Loss to prison for eight years because he didn't understand the detailed requirements of the Act, because he didn't have money to or the resources to find proper housing that was close to work, have a car to transit him back and forth, or understand that it was three consecutive days. It was three calendar year days rather than three consecutive days that he had to register if he was away from home or in a temporary domicile. But wouldn't those be, say, factors of mitigation that would have been argued before the trial judge to take into consideration when fashioning what sentence that may be imposed in the case laws replete saying that the trial court has vast discretion in giving a sentence, correct? It does, but this Court's function is not to act as a rubber stamp. This judge's discretion resulted in this State spending over $22,000 a year to incarcerate someone who no one has alleged is dangerous, no one has alleged was hiding from police or trying to violate the statute, and no one has alleged has any recurrence of sex offenses. So to say that that person needs to go to prison for eight years, that that person should have lost parental rights to his daughter, which, by the way, happened in this case as a result of the incarceration, simply because the judge has heard this information and not provided a detailed analysis of why that's justified is unreasonable. Yes, the trial courts absolutely should have discretion. They are able to hear the facts and arguments are made, but that discretion isn't unbridled and shouldn't be beyond this Court's review merely because it exists. And, you know, particularly where we're talking about a statute that rightly or wrongly imposes very serious restrictions on someone's movement appears to not have been entirely understood by all of the police that Mr. Loss was in contact with, Mr. Loss himself, even to some degree, the counsels arguing in this case, there were some questionable statements of the law. So to put him in prison when his rationale and explanation for his understanding, while not a defense to the crime, is it is a justification for probation and monitoring rather than a prison sentence, particularly one of eight years. So for those reasons, it is incumbent on this Court not to simply rely on the trial judge's discretion, but to really take a look at what the statute is here and our legislature's admonishment that prison should be reserved for people who are violent or whose conduct is so serious that probation would deprecate the seriousness of that offense. Well, isn't one of the factors for trial judge's discretion whether or not the probation is likely to be complied with? And we have here a situation where he has repeatedly violated probation and where you have a situation where he has a criminal record with 32 traffic offenses and 13 driving while suspendents. So what should give the court the inclination to think he's going to comply with probation? Well, his successful completion of probation in 2009, which was based on his 2006-2007 conviction, he was successfully discharged in 2009 and didn't have any recurring sex offenses after that. That speaks to compliance. The second issue is that we have two offenses here. The first offense occurred when Mr. Lotz originally left prison. He went to live with a friend in Xenia, Illinois, and got a job at Xenia Manufacturing. He wasn't able to stay with that friend because she moved and his transportation options were limited, so he couldn't go with her. So he then moved in with a friend in Louisville. So the first incident was he was traveling that 15 miles really at the discretion of people who he could get rides from, from Louisville where he resided to Xenia for work. So sometimes he would sleep over. Isn't that Louisville? I apologize. Only in Illinois. My Clay County co-worker will be very disappointed. I interrupted. I'm sorry. So the first incident was related to these travel and financial issues. Then he had contact and he had the first conviction, the first charge resulting in the first conviction. After that, he moved mountains to get back home to Louisville every night, not every night, every third night, because he thought, based on his discussions with police, that's what he had to do to comply. So he would crash with a friend or a girlfriend, and then he would make sure he got back to his registered address. He was wrong. Should he have made more phone calls to make sure? Should he have, while he's working these midnight shifts, and should he have done something different? Well, sure. We can all look back and say you could have done something different. But is his confusion, which is similar to the confusion this Court has pointed out in these cases, result in a prison sentence where he is actively trying to comply? So that is why I think a term of probation would have been reasonable in this case and the appropriate statutory relief because it does show that he was trying to comply. And that was the second offense, when he was trying to comply. Yes, and those dates that are pointed out every third night, that's not from his testimony alone. That's from the people who lived at the Bryant Street address. That's from the friend who he was walking home with, who the police saw him walk home with. So I'm not just asking you to take Mr. Loss' word that he was trying to do the right thing. I'm going to take just one more minute. Could you tell me, could these sentences have been imposed concurrently as opposed to consecutively under the statutory scheme? I don't believe so. Because it occurred while he was on bond for the first one. One more question. What do you know, if you know, is his current projected out date? It is, his current parole date is April 3, 2020. So, you know, this isn't a matter of sending him back for probation. It's a matter of shortening the prison and the financial burden. And then we have a projected discharge date of April 3, 2022. So that would be. That would be with MSR? Yes. So we have the, yeah, April 3. And what was the name of the case where you said that the 5th District has acknowledged confusion and temporary domiciles? Burchell. Yeah, I believe it's in the reply brief. I can pull that up next time. But it was talking about three consecutive versus three calendar in terms of when you need to report absences from the residence. Thank you. Okay. What? Save the state. Before you start, Ms. Book, I want to express my condolences on your miscarriage. Thank you very much, Your Honor. I'm sorry. I had to ask for a continuance for my case last time. Don't be sorry. May it please the court, counsel. Here, I just want to say it seems like you guys have a good grasp of the situation, what's going on. So I don't want to be a dead horse when I'm addressing this. But I do want to say. Yes, Your Honor. I was just going to ask you first. Do you believe that on this public defender fee that the defendant has the capability to pay it? Interceding amount as opposed to when it was briefed. Do you have a position on that? One thing that trial courts look at is they don't expect a defendant to be able to pay while they're incarcerated in the Department of Corrections. So when they make a determination of what they're going to charge or find the defendant with, whatever fees to assess, they do it with the mind that when they get out, they will come back, and then they will discuss how much they can pay, when they can pay, once they get out on their feet. And from what I've experienced when I was in Clinton County, they're usually very, very understanding. Now, I know at this point they're assessing a fee with the hopes that when he gets out, he could pay. But I believe the testimony that was provided to the court, although it's kind of confusing, was that the defense counsel said that if he is placed on probation, we believe he'll be able to get a job and be able to pay the fee. And the court then, instead of asking the defendant himself, then relied on that. I can't begin to go through what was going on in his mind, but it was typically because they expect once they get out, they can get the job and then pay. So I think it would be appropriate for the case to be remanded for the sole purpose of the court properly inquiring with the defendant whether or not he could pay. Okay. Thank you. No problem. Okay. For the sentencing, we ask that this court affirm the appellant's sentence because the ruling was not so arbitrary, fanciful, or unreasonable that no reasonable person would agree with it. When you look at the facts presented on the record, the PSI, the testimony of everyone, even including the factors in mitigation which the court is presumed to have considered if they're presented, it all establishes that the sentence that the defendant received on the two separate counts with the 3.5 for the Class 3 and the 4.5 for the Class 2, they are well within the statutory guidelines. If we look at... You know, one of the things about this case that was interesting to me is that the police department that was involved, the officers seemed to be very involved in determining where this gentleman was at all times. They generally are. Once again, I can only speak from my prior experience, but they generally are more concerned because they take sex offender registration very seriously and they usually have an officer dedicated solely to doing that so they can keep track of them and they communicate well with the other counties too. So if, for instance, they hear a lot of times it's word of mouth that they hear from someone else that the defendant or the appellant is not registering like he's supposed to register or sometimes they periodically check up with their registered address. If they happen to hear that it's not what they think it should be, then they will contact the jurisdiction for where they think they might be and see if they've registered there. From then it triggers a more intense investigation. I'm guessing that's probably what happened here. But it's very typical that they monitor. They'll go on Facebook and Instagram and try to monitor to see if the defendant's on there because they're supposed to be monitored if they're using social media. So they take it very seriously when they investigate these. Whether or not it's three misdemeanor public indecency offenses or a child sex offense, they treat all of the registration the same because it's a separate offense if you violate your registration requirements. That's its own offense based on what the legislature has decided. So what about the two years he got from Shelby County? With regard to the prior violation? Yes. I believe it was also he claimed a mistake that he didn't understand the registration requirements. I believe in the PSI they provided, the probation department provided evidence that there was actually two times he failed to register properly and he got the two years in DOC as a plea and they dropped the second failure to register. So he was put on notice that he needs to pay. And he completed that sentence? He did. He spent his two years in DOC and then when he got out he ran into this issue of also messing up the registration. It's one of the issues he claimed he had trouble with. It was amazing. I don't know how they got this, but there was a recording where he's trying to find out about this three-day and it seems like one of the officers may have been just as confused as he was. That is probably very accurate. If an officer is not the designated sex offender registration officer, they don't go to the training that the sex offender registration officers go to. That's why they come upon the defendant to make sure that they talk to their designated officer. That's why they meet with him. That's why they say, call me if you have any questions and everything. So this gentleman would have had a designated sex offender? It would have been Officer Greenwood that he met with. And Clay County, as small as it is and limited resources as it is still, why does that designated officer? I don't know if at that time they do. I could certainly call and inquire. No, I mean they, when I say still, I mean they had one at that time. Yes. And she testified at the sentencing hearing. The state called her to testify. She was the one that went over the conditions with the defendant. He had brought up that he had a learning disability. He never raised that with her. When she went over the conditions and they go through them, making sure they initial each separate one, and he initialed all of them, he said he understood them when she went over them with him. And he at the beginning. She, do you remember her name? Officer Greenwood. Greenwood. Greenwood. But that wasn't the officer that he asked questions of? No, I don't believe it was. I believe when he talked to them, it was a different officer that was not as familiar with the Sex Offender Registration Act as Officer Greenwood. It was a felon? Felon? Felon officer? It would not have been Officer Greenwood. I also want to. It seems like the way the statute is written with these temporary domiciles, I mean, you pick up a gentleman one day for not complying and then he tries to comply, you pick him up again, and now it becomes a class two and then you can pick him up again. We leave a lot of power to the state to determine what kind of discretion to use in charging and when to go forward. The legislature does leave a lot of discretion to the state. The legislature is the ones that have set this up, and whether or not you or I or the defendant even thinks it's confusing or convoluted, the legislator has been the group that has made it that way and set the penalties and made it strict liability. So I can agree insofar as the three-day temporary domicile is confusing, but whether or not I find it confusing has nothing to do with the constitutionality of this sort of act and what is required. And I don't think they raise the constitutionality of it at all. Well, a lot of the appellant's argument goes towards it's confusing, he didn't understand. Well, I think that's called abusive discretion. I think that's where they're fine with regard to mitigation issues. I think, at least as I read it and as I hear the argument, in front of me if I'm wrong, that they acknowledge it's a strict liability account. Right. But their arguments cross over, I believe,  and should he have been sentenced, as Mr. Glazey was, to the actual structure of SORA that allows it to be sentenced the way it is. And whether or not he understood, whether or not it's confusing, whether or not officers or court personnel understand, it goes more towards the guilt phase. And he pled guilty to that. So to then turn around and say, well, I'm pleading guilty, but still I don't think it's fair because I don't agree with the statute, it's very confusing, crosses over into the constitutionality, or at least borders it very closely. What should be focused on, I believe strongly, and what the court, I believe, focused on was the PSI and how many prior offenses he had. He had a criminal history ranging from 1997 to 2014, many traffic offenses, which would be de minimis if they were speeding and things like that, that the court might not have considered. But they rose to the level of class A misdemeanors for driving the license suspended. And then he has a history of, yeah, they're class A misdemeanors, most of them are, but he could not complete probation on the majority of them. For the 2001 class A misdemeanor, for the public indecency, the first one, he was revoked twice on probation. Then he, for the second public indecency, his probation was revoked twice and he was eventually ordered to serve jail time because he kept being unable to comply with probation. Then there was a class A misdemeanor for trespass to motor vehicle and his probation was revoked once and he received jail time. He did complete his probation successfully on his third public indecency. However, in 2014, he was picked up for failure to register, which he had to because he had the three prior public indecency, and he was sent to DOC. So whether or not he actually learned anything or had been rehabilitated means more towards he did complete probation, but he still was committing crimes. And then it brings us to these other crimes. Between the time he got out of prison for Shelby County, which was 2014, and the non-registration, what we're talking about here, would only have been a couple of years. Right. What was his criminal activity like then? What was his traffic offenses and all of that? The PSI did not. I would have to look at the PSI and the crime again. I believe he laid low, somewhat low, compared to committing actual class A misdemeanors and things like that. So for the approximate two years prior to the time he was picked up, he was working? Well, he was in the Department of Corrections for some of that time. I thought he got out in 2014. The 2014 was when he, I believe, was convicted and sent to DOC. Once again, I would love to go back and look at that, get the PSI, and I can supplement anything you guys need. Well, my note is that he was released in December of 15 when he was released from DOC for the first sentence. That's in my notes. Shelby County. Correct. The state believes that the judge, including the presumptions that weigh in favor of the trial judge's determination, the state believes that the judge's sentence for the defendant, for the two separate counts, 3.5 years and 4.5 years, was within the statutory range. He said on the record that he considered the factors of mitigation, aggravation, PSI, everything, including the financial burden on the state that was raised by the defendant. And he determined that he believed that this sentence was a fair sentence, and we ask that the court affirm this. Just one quick question. Yes. I think you raised in your brief the issue that he's essentially waived his argument, the jurisdictional argument, because he took a plea. Yes, Your Honor. So how do we need to address that? What do you mean the jurisdictional argument? The argument, I believe, that the statute was unconstitutional and the court does not have jurisdiction to hear it at that point. Bringing that up would have been properly done. I don't understand this. Maybe somebody can enlighten me. That's why I asked the question. I don't understand what you're saying. The defendant, to argue it at sentencing, that he believes that the statute, and we've hashed this out, and I know where this court stands, but to argue that the statute is not fair because it's confusing and he shouldn't have been sentenced at the level it was, goes back to the jurisdiction issue, dealing with whether or not the court can even hear cases about the constitutionality of SORA. I believe it's been decided numerous times that. What do you mean? This court absolutely is a court of general jurisdiction. Are you saying this court can't hear a SORA case? No, no, no. Just for the record, because this is on the tape, SORA is S-O-R-A, Sex Offender Registration Act. Yes. I believe that this court has determined that the constitutionality of SORA should not be raised as an issue because many cases have come out saying that SORA is constitutional, the act is constitutional. So to say that it's unconstitutional at this level would have been something that should have been raised when he was pleading guilty or not guilty. Okay, when you use the word jurisdiction, we have jurisdiction as long as there's subject matter jurisdiction. Okay. Right? All right. I apologize. I'll take the blame. I asked a bad question. Okay. I'm having trouble with the word jurisdiction. I apologize. I don't know. Court procedure is different. A waiver of an issue is different than jurisdiction of an issue. Yes, Your Honor. So merely because this court is entertaining SORA cases in the past would not preclude us from entertaining them again in the future depending on how they're circumstantially raised. I mean, it's always an as-implied claim. I mean, I could think of a bunch of issues, but you're not saying, or are you saying that this court has no subject matter jurisdiction in this case? No, I am not seeing that at all, Your Honor. Okay. Not at all. Okay. I apologize if that was confusing. Don't apologize. I'm just trying to figure out what's going on. I'll take the heat on that question. I absolutely believe this court has jurisdiction to hear this matter. It just has to be. Do you believe that certain issues have been either forfeited or waived? Yes, Your Honor. Okay. That is all, Your Honor. All right. Thank you. All right. Anything else? No. Thank you. All right. Thank you. Anything else on that? No. All right. What does the defendant have to say? Ms. Crowley. First, to pick up on the last point, we have not made a constitutional challenge, nor am I attempting to make now a constitutional challenge to the statute under which Mr. Loss was convicted. Yes, some of the cases cited in the brief for analysis or discussions by the appellate courts were cases in which there were constitutional challenges to SORA. That does not make them irrelevant to the issue now, which is the proportionality or excessive nature of Mr. Loss's sentence. And these issues were Mr. Loss's particular conduct, Mr. Loss's prior conviction. These were issues that were raised and discussed at the original sentencing hearing and subsequent sentencing hearing. So this is not a new issue. It is simply developed through the appellate briefs. And as the appellate counsel indicates and seems to acknowledge at this point, this is a confusing portion of the statute. It's interesting to compare with the portions that were discussed on the in-depth warning sheet that, again, Sergeant Greenwood and Mr. Loss went over that sheet with him for 15 or 20 minutes. It says that you must register an address within three days of changing your address or temporary absences for more than three days in a calendar year require you to register your new address. So should Mr. Loss have gotten from this that he needed to ask more questions? Should he have gotten from this that he needed to make 100 percent certain that he was following the rules? Maybe. That goes to guilt. But is his confusion understandable and not a good reason to send him to prison for eight years? Absolutely. And that is something that this Court should consider and feel. Now, to touch back on, Justice Capes, your earlier question, the officer that he called was Cartwright. He was the sheriff's deputy. His involvement with Cartwright was that he, Mr. Loss and his friend were walking home from their job at Xenia Manufacturing. He was going to stay at his friend's house because, again, his registered address was 15 miles away and he wasn't able to get a ride. So Cartwright was very aware of where he was. I thought that was interesting, the deputy or sheriff who Cartwright gave him a ride because he got off at midnight.  So I assume what happened is he, and this, of course, is not detailed in the record, but just from what I consider my own common sense, is he probably stopped them to see what they were doing. They reasonably said, we're walking from work. And he's like, oh, I'll give you a ride. Now, whether it was that, was there any other motivation, I don't know. So then we have a few weeks later, Cartwright goes to the registered address to follow up on him, talks to Mr. Loss' friend who lives there, who contacts Mr. Loss. Mr. Loss calls Cartwright for clarification. And that is the recorded phone call that appears in the record. So, yes, Cartwright does, is just as confused as Mr. Loss about the requirements. Should Mr. Loss have followed up? Perhaps. Is his failure to do so a reason to imprison him when he's working, when he's trying to comply with the statute, when he's trying to work on getting parental rights back for his daughter and contributing to his son's well-being? No, they are not. I thought he had already lost parental rights to his daughter, and then while this was going on, he lost them to his son. No. The litigation regarding, so while Mr. Loss was in prison for the initial offense in 2014, his daughter's mother lost parental rights. Oh, the mother. He was seeking to challenge that determination regarding himself while he was out of prison. He then lost the appeal after he was again sentenced to prison. And that decision is in reheld L, which is cited in the briefing. So those are all relevant factors that a judge should consider when determining probation versus prison. Again, it's not a matter of guilt. It's not a matter of constitutionality. Mr. Loss, in pleading guilty, acknowledged his wrongdoing and said, I should have done better. But whether this is meriting prison, particularly of this expense and length, no, it is not. Now, just briefly, counsel mentioned that perhaps what the court was thinking in terms of the public defender fee was that, well, we'll haul him back in here after he gets out of prison and see what he can do at that point. I would submit that that is unreasonable. Perhaps that is. I've never heard of that. It's common practice. Yes. So in this. They'll set it on a pay or appear docket and they'll get the person in and, like they said, ask them, what can you afford? Are you working? Those type of things. So for a public defender fee, which is completely discretionary. Go ahead. Expending additional judicial resources, cutting into any income, Mr. Loss may be able to make that he could be trying to be a contributing member of society and potentially funneling money to his son, who he has not lost parental rights to. But the son lives in Florida, correct, or at the time? As of the last record, he was living in Florida with Mr. Loss's mother. So it's not a break of contact or a situation where he has no involvement. Okay. Thank you. All right. Thank you very much, Mr. Coddy. This matter will be taken under advisory.